**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-21553-BLOOM/Elfenbein**

BCN CATERING BARS SL.,

      Plaintiff,

v.

JAN C OZUNA ROSADO, and
NIBIRUINTERNATIONAL LLC,

      Defendants.

_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendants Jan C. Ozuna Rosado ("Ozuna") and

Nibiruinternational LLC's ("NIBIRU") (collectively "Defendants") Motion to Dismiss Plaintiff's

Complaint ("Motion"), ECF No. [20]. Plaintiff BCN Catering Bars SL. ("BCN") filed a Response

in Opposition, ("Response"), ECF No. [30], to which Defendants filed a Reply, ECF No. [31]. The

Court has carefully reviewed the Motion, the record in this case, the applicable law, and is

otherwise fully advised. For the reasons discussed below, the Motion is granted in part and denied

in part.

### I.   BACKGROUND

Plaintiff BCN entered a license agreement with Defendants for the design, manufacture,

and distribution of a vape product bearing the name of Defendant Ozuna. Following certain

payments, BCN alleges Defendants failed to perform. *See generally* ECF No. [11]. In its

Complaint, BCN asserts the following claims: (I) Breach of Contract against Both Defendants; (II)

Breach of Contract against NIBIRU; (III) Breach of Implied Covenant of Good Faith and Fair

Dealing against Both Defendants; (IV) Fraud in the Inducement against Both Defendants; (V)

Unjust Enrichment against Both Defendants; (VI) Promissory Estoppel against Both Defendants; and (VII) Conversion against Ozuna. ECF No. [11]. BCN alleges that on or before May 2, 2023, BCN and NIBIRU executed a Contract of License and Collaboration ("Contract"), for the production, marketing, and distribution of vape pens under Ozuna's brand and likeness. ECF No. [11] at ¶ 10; ECF No. [11-2]. During negotiations, Ozuna personally participated in discussions with BCN representatives, and emphasized that his direct personal involvement and promotion would drive the project's success, creating the impression that he was personally committed to actively promote the product. *Id.* at ¶ 11. BCN entered into the Contract specifically because of Ozuna's celebrity status and his express commitment to personally promote the products. *Id.* at ¶ 12. NIBIRU operates exclusively from Ozuna's personal residence**,** as stated in the Contract, with no separate business location. *Id.* at ¶ 18. Ozuna exercises complete control over NIBIRU, making all business decisions without distinguishing between his personal activities and NIBIRU's operations. *Id.* at ¶ 19.

> According to the terms of the Contract,
>
> [NIBIRU] will collaborate in the promotion and dissemination of the INSTAPUFF brand manufactured by [BCN]. This promotion and dissemination will be carried out through the following collaboration:
>
> - Launch of the collection
> - Promotion of the product on social networks with a minimum of 1 story per quarter and 1 post per quarter.
> - Photo session(s), in which the performance of the PRODUCT is incorporated.

ECF No. [11-2] at 7; ECF No. [11] at ¶ 13.

Ozuna's promotional obligations were to be completed within a firm one-year contract term, spanning from May 2, 2023, to May 2, 2024. *Id.* at ¶ 14. BCN made an advanced payment of $1,000,000.00 for the promotional activities, and after the advanced payment was made, Ozuna personally exercised dominion and control over these funds. *Id.* at ¶¶ 15-16. BCN fully performed

all its obligations under the Contract. *Id.* at ¶ 20. Despite repeated requests from BCN for performance of Ozuna's promotional obligations, Ozuna retained the funds and deliberately failed to perform any required obligations. *Id.* at ¶ 17. BCN made numerous attempts to secure Defendants' performance, including emails, text messages, phone calls, and formal written requests. *Id.* at ¶ 22.

On January 3, 2024, relying on Defendants' contractual obligations, BCN entered into a multinational distribution agreement with Midwest Goods, Inc. ("Midwest"). *Id.* at ¶ 23. The distribution agreement was projected to generate at least $134,400,000.00 in revenue, with estimated profits of no less than $49,200,000.00 for BCN and $9,600,000.00 for Defendants. *Id.* at ¶ 24. The distribution agreement specifically referenced and was contingent upon Defendants' performance of the promotional obligations under the Contract, as Ozuna's brand recognition was an essential part of the deal. *Id.* at ¶ 25. On February 27, 2024, Midwest canceled Purchase Order No. 000092 in the amount of $2,240,000.00 and Purchase Order No. 000122 in the amount of $420,000.00. *Id.* at ¶ 26. Due to Defendants' breach and the resulting termination of the Midwest distribution agreement, Midwest canceled its entire business arrangement with BCN, inflicting additional profit losses of no less than $46,800,000.00. *Id.* at ¶ 27.

In the Motion, Defendants assert that all claims against Ozuna must be dismissed because Ozuna was not a signatory to the Contract, which was executed solely between BCN and NIBIRU. ECF No. [20]. Further, Defendants argue dismissal is warranted because the Complaint fails to state a cause of action. *Id.* BCN responds that the Complaint properly alleges claims against Ozuna based on the alter ego theory, and the Complaint states claims for relief. ECF No. [30]. Defendants reply that BCN's alter ego allegations fail to satisfy the requirements to pierce the corporate veil in Florida, and the Complaint fails to state claims for relief. ECF No. [31].

## II.   LEGAL STANDARD

### A.  Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this "plausibility standard," a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "A facially plausible claim must allege facts that are more than merely possible. . . . But if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the allegations satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *See id.* at 556.

Further, "[o]n a Rule 12(b)(6) motion to dismiss, '[t]he moving party bears the burden to show that the complaint should be dismissed.'" *Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez–Arriola v. White Wilson Med. Ctr. PA*, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007) ("We are required to accept the facts as set forth in the plaintiff's complaint as true, and our consideration is limited to those facts contained in the pleadings and attached exhibits.").

### B.  Rule 9(b)

For fraud claims, Fed. R. Civ. P. 9(b) requires particularity in pleading the circumstances constituting fraud, including the who, what, when, where, and how of the misrepresentations. *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). Under Rule 9(b),

In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b).

"Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005). "The particularity rule serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir. 1988) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)). Yet, Rule 9(b) "must not abrogate the concept of notice pleading." *Ziemba v. Cascade Int'l., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Durham*, 847 F.2d at 1511). Thus, Rule 9(b)'s particularity requirement "must be read in conjunction with Federal Rule of Civil Procedure 8's directives that a complaint need only provide 'a short and plain statement of the claim[.]'" *Hill v. Morehouse Med. Assocs., Inc.*, No. 02–14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (quoting Fed. R. Civ. P. 8(a)).

## III.  DISCUSSION

### A.  BCN's Claims Against Ozuna

Defendants argue that all claims against Ozuna must be dismissed because he is not a signatory to the Contract. ECF No. [20] at 6. Defendants contend that Florida has stringent requirements to pierce the corporate veil, and no specific facts demonstrate that Ozuna used NIBIRU to perpetrate fraud or evade legal obligations, such as evidence of commingling, undercapitalization, or sham transactions. *Id.* at 7. BCN responds that the Complaint sufficiently alleges that NIBIRU was an alter ego of Ozuna, and a motion to dismiss is not the proper forum to litigate whether NIBIRU was indeed Ozuna's alter ego. ECF No. [30] at 7. Rather, BCN asserts that discovery is necessary to prove that NIBIRU was an alter ego of Ozuna, used fraudulently. *Id.*

"A general principle of corporate law is that a corporation is a separate legal entity, distinct from the persons comprising them." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008); *see also Whetstone Candy Co., Inc. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms."). A corporation is "capable of entering contracts and doing business in its own right. The purpose of this [] is to limit the liability of the corporation's owners, whether they be individuals or other corporations." *Molinos Valle del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011).

Under Florida law, to hold a corporation's owner liable, i.e., to "pierce the corporate veil," a plaintiff must prove that:

> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle del Cibao, C. por A.*, 633 F.3d at 1349 (quoting *Gasparini*, 972 So. 2d at 1055) (emphasis in original); *see Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984) ("The corporate veil will not be penetrated either at law or in equity unless it is shown that the corporation was organized or employed to mislead creditors or to work a fraud upon them." (quoting *Advertects, Inc. v. Sawyer Indus., Inc.*, 84 So. 2d 21, 23 (Fla. 1955))).

On a motion to dismiss, "the complaint attempting to pierce the corporate veil 'must allege facts sufficient to pierce the corporate veil' of the corporation." *Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, No. 09–20372–CIV., 2010 WL 2652496, at *6 (S.D. Fla. Feb. 26, 2010)

(quoting *Aldea Commc'ns, Inc. v. Gardner*, 725 So. 2d 456, 457 (Fla. 2d DCA 1999)). "The plaintiff must allege 'deliberate misuse of the corporate form — tantamount to fraud . . . . [A]bsent proof of fraud or ulterior motive by the shareholder, the corporate veil shall not be pierced.'" *Wholesale Stone, LLC v. Stone-Mart Marble & Travertine Grp. LLC*, CASE NO. 13-24342-CIV-ALTONAGA, 2014 WL 11906611, at *4 (S.D. Fla. Mar. 10, 2014) (quoting *John Daly Enters., LLC v. Hippo Golf Co., Inc.*, 646 F. Supp. 2d 1347, 1353 (S.D. Fla. 2009)) (alterations in original).

Here, Defendants contend that BCN's allegations are conclusory and fail to demonstrate that Ozuna used NIBIRU to perpetrate fraud. ECF No. [20] at 7. Rather, the Complaint merely alleges that NIBIRU operates from Ozuna's residence and Ozuna "controls" NIBIRU. *Id.* "[T]he mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil." *Gasparini*, 972 So. 2d at 1055. Moreover, "a plaintiff 'must allege . . . that the individual defendant engaged in "improper conduct" in the formation or use of the corporation.'" *Nationwide Advantage Mortg. Co.*, 2010 WL 2652496, at *6 (quoting *Aldea Commc'ns, Inc.*, 725 So. 2d at 457).

In *Nationwide*, the plaintiff brought suit against a corporation and its president, alleging that mortgage loans sold to the plaintiff by the corporate defendant were "defective." *Id.* at *1. The asserted a claim for breach of contract against the corporation's president, seeking to pierce the corporate defendant's veil. *Id.* Specifically, the complaint alleged that the president used proceeds from the sale of loans completed by the corporate defendant to repay the president's own individual mortgages. *Id.* at *6. Further, the complaint alleged that the president utilized his corporation to fraudulently induce the plaintiff into purchasing mortgage loans that "were represented to be of a certain kind of quality, but in fact were not of such kind and quality[.]" *Id.* The court concluded

that the factual allegations, taken as true, were "sufficient to satisfy the 'mere instrumentality' and 'improper conduct' requirements[.]" *Id.*

The Middle District of Florida's decision in *Sunoptic Technologies, LLC v. Integra Luxtec, Inc.*, 2009 WL 722320 (M.D. Fla. Mar. 18, 2009), is similarly persuasive. There, the plaintiff asserted that after negotiations with the defendant, the plaintiff entered into a distribution agreement with the defendant's company. 2009 WL 722320, at *1. The complaint further alleged that the company was "was an 'undercapitalized shell corporation' created to protect [the defendant] from 'individual liability for his fraudulent and tortious behavior.'" *Id.* at *1. After the company failed to perform under the contract, the plaintiff brought suit against both the individual and the company. *Id.* The defendant sought to dismiss because he was not a signatory to the distribution agreement, and he claimed that the complaint failed to state sufficient allegations to pierce the corporate veil. *Id.* at *2. The court concluded that "[a]lthough poorly drafted and providing only the minimum facts permitted by pleading standards to survive a motion to dismiss, the plaintiff sufficiently state[d] a claim for breach of contract against [the defendant] even under the *Twombly* standard." *Id.* at *2; *see Zhejiang Dushen Necktie Co., Ltd. v. Blue Med, Inc.*, CASE NO. 16-24679-CIV-LENARD/GOODMAN, 2017 WL 4119604, at *5-*6 (S.D. Fla. Sept. 18, 2017) (concluding that the plaintiff's allegations were sufficient, taken as true, to pierce the corporate veil where the complaint alleged that the corporation's address was the home address of the individual defendant, the individual defendant had complete dominion and control over the companies, the individual defendants harbored funds in their other companies to avoid paying off a debt, commingled funds and business relationships, and failed to follow corporate formalities); *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373-74 (S.D. Fla. 2011) (concluding that alter ego theory was not properly pled because the complaint's allegations that

the defendants were shell corporations used by the individual defendants to commit a major fraud did not explain how the individual defendants abused the corporate form).

Here, BCN has sufficiently alleged facts to support piercing the corporate veil. The Complaint alleges that "(a) NIBIRU operates exclusively from Ozuna's personal residence; (b) the Contract itself required Ozuna's personal services which only he could perform, demonstrating the inseparability of Ozuna and NIBIRU; (c) Ozuna exercises complete control over NIBIRU's operation and decisions." ECF No. [11] at ¶ 31. The allegations are similar to those in *Sunoptic*, where the complaint alleged that the defendant personally participated in negotiations for the distribution agreement, and created his company to protect himself from individual liability, 2009 WL 722320, at *1. Here, the Complaint alleges that "Ozuna personally participated in discussions with BCN . . . . [and] emphasized that his direct personal involvement and promotion would drive the project's success[.]" *Id.* at ¶ 11. As to the promotional obligations of the Contract, the Complaint alleges that its requirements further illustrate the inseparability of Ozuna and NIBIRU, as it specifically required Ozuna's personal promotional activities that only he could perform. *Id.* at ¶ 19.

Moreover, in *Nationwide*, the complaint alleged that the individual defendant used proceeds from the sale of those loans to repay his own personal debts. Here, the Complaint alleges that Ozuna "personally exercised dominion and control over [the advanced payment], diverting them for his own personal use and benefit rather than fulfilling the contractual obligations." *Id.* at ¶ 16.[1] The Complaint also alleges that BCN was injured because it entered into the Contract specifically because of Ozuna's celebrity status. *Id.* at ¶ 12. "While discovery may not bear out

---

[1] Pleading on information and belief is permissible when the facts are "peculiarly within the possession and control of the defendant." *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302, 1311 (S.D. Fla. 2011) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)).

sufficient evidence to support a claim on the merits for piercing the corporate veil at the dispositive motion stage or at trial, the factual allegations of Plaintiff's complaint . . . are sufficient to state a claim and to allow discovery[.]" *Associated Indus. Ins., Co., Inc. v. Advanced Mgmt. Servs., Inc.*, No. 12–80393–CIV., 2013 WL 1149668, at *6 (Mar. 19, 2023). Therefore, BCN has pled sufficient allegations to support an alter ego theory.

### B.  Failure to State a Claim

#### i.  Count I - Breach of Contract

Defendants argue that BCN's breach of contract claim fails because the allegations are expressly contradicted by the plain language of the Contract. ECF No. [20] at 8. The Contract provides in pertinent part:

> [NIBIRU] will collaborate in the promotion and dissemination of the INSTAPUFF brand manufactured by [BCN]. This promotion and dissemination will be carried out through the following collaboration:
>
> - Launch of the collection
> - Promotion of the product on social networks with a minimum of 1 story per quarter and 1 post per quarter.
> - Photo session(s), in which the performance of the PRODUCT is incorporated.

ECF No. [1-2] at 7.

Defendants contend that there is no express provision obligating Defendants to personally create specific promotional content, appear in photoshoots, or post to social media. Defendants assert that, at most, the Contract references "collaboration" in promotional efforts, but this does not equate to a mandatory duty of personal performance, and no such duty is defined with contractual specificity. ECF No. [20] at 8. BCN responds that the Contract explicitly required collaboration between NIBIRU and BCN as to the promotion and dissemination of the product. ECF No. [30] at 8. Further, BCN states that even if the Contract was determined to be ambiguous,

the oral statements of Ozuna promising personal performance would be admissible under the parol evidence rule.

"The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Schiffman v. Schiffman*, 47 So. 3d 925, 927 (Fla. 3d DCA 2010) (quoting *Abbott Labs., Inc. v. Gen. Elec. Cap.*, 765 So. 2d 737, 740 (Fla. 5th DCA 2000)). Courts "give effect to the plain language of contracts when that language is clear and unambiguous." *Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1246 (11th Cir. 2002). Further, courts "must read the contract to give meaning to each and every word it contains, and [] avoid treating a word as redundant or mere surplusage 'if any meaning, reasonable and consistent with other parts, can be given to it.'" *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (quoting *Roberts v. Sarros*, 920 So. 2d 193, 196 (Fla. 2d DCA 2006)). "[I]f a contract provision is 'clear and unambiguous,' a court may not consider extrinsic or 'parol' evidence to change the plain meaning set forth in the contract." *Cost Recovery Servs. LLC v. Alltel Commc'n, Inc.*, 259 F. App'x 223, 225-26 (11th Cir. 2007) (quoting *Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. 1st DCA 2005)). However, Florida law recognizes exceptions that may allow the introduction of extrinsic evidence to interpret the agreement and the parties' intentions when the terms of the agreement are ambiguous. *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1309-10 (11th Cir. 1998) (addressing two exceptions to the parol evidence rule: (1) to show an oral agreement induced the signing of the written contract, or (2) to explain a latent ambiguity in the written contact.).

Defendants are correct that "[w]here a contract is simply silent as to a particular matter, courts should not, under the guise of construction, impose on the parties contractual rights and duties which they themselves omitted." *S. Crane Rentals, Inc. v. City of Gainesville*, 429 So. 2d

771, 774 (Fla. 1st DCA 1983). However, as BCN alleges, the Contract explicitly states that NIBIRU shall collaborate in the promotion and dissemination of the product. *See* ECF No. [11-2]. Defendants invite the Court to interpret the meaning of "collaborate," which is improper at this stage, as it may require consideration of matters outside of the pleadings. *See Cantiere Nautico S.p.A. v. Luxury Marine Grp., LLC*, 2009 WL 3538722, at *4 (S.D. Fla. Oct. 28, 2009) ("[T]he Court concludes that because extrinsic or "parol" evidence may be admissible and matters outside the pleadings may need to be considered in interpreting the Agreement, the Court cannot grant the motion to dismiss in regard to the claims for breach of contract . . . . [A]t the motion to dismiss stage, Plaintiff has adequately alleged claims for breach of contract[.]").

Taking the facts alleged in the Complaint as true, BCN states a claim for breach of contract. The Complaint alleges that, pursuant to the Contract, Defendants expressly agreed to complete the promotional obligations and received an advanced payment of $1,000,000.00. ECF No. [11] at ¶¶ 32-34. The Complaint further alleges that Defendants breached the Contract by not completing the promotional obligations. *Id.* at ¶ 35. Accordingly, Defendants' Motion is denied as to Count I.

### ii.  Count II – Breach of Contract

In Count II, BCN asserts an alternative breach of contract claim solely against NIBIRU, and not Ozuna. *See* ECF No. [11]. Defendants seek to dismiss Count II as duplicative, arguing that the claim is entirely duplicative of Count I. ECF No. [20] at 10. BCN responds that Count II is an alternative claim directed solely to NIBURU without the alter ego allegations, and both should be allowed as they offer alternative bases of liability. ECF No. [30] at 9-10.

Defendants rely on two cases, *Desai v. Government Employees Insurance Co.*, Case No. 23-80951-CIV-CANNON, 2023 WL 11878200 (S.D. Fla. Nov. 20, 2023), and *Kenneth F. Hackett & Associates, Inc. v. GE Capital Information Tech. Solutions, Inc.*, 744 F. Supp. 2d 1305, 1310 (S.D. Fla. 2010). However, both *Desai* and *Kenneth* involved the question of whether claims for

declaratory relief could be pled where the plaintiff also alleges a sufficient and related breach of contract claim. *See Desai*, 2023 WL 11878200, at *6 ("[A] court should not entertain an action for declaratory relief when the issues are properly raised in other counts of the pleadings and are already before the court. Such is the case here. Litigating Plaintiff's declaratory claim would be unproductive and duplicative, . . . because it will necessarily be resolved through litigation of the contract counts." (quoting *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1346 (S.D. Fla. 2012))); *Kenneth*, 755 F. Supp. 2d at 1310-11 (considering whether related claims for declaratory relief and breach of contract could both be pled and concluding, "should [the plaintiff] not prevail on its breach of contract claim, it may still be entitled to declaratory relief. For this reason, [the] claim for declaratory relief is not redundant and will not be dismissed."). The Court finds these cases to be inapposite.

As BCN asserts, redundancy "is [not] grounds for dismissal under Rule 12(b)(6) for failing to state a claim." ECF No. [30] at 9 (quoting *Kenneth*, F. Supp. 2d at 1309). Count II is pled in the alternative to the alter ego theory alleged in Count I. The Court finds no basis to dismiss Count II.

### iii.  Count III - Breach of Implied Covenant of Good Faith and Fair Dealing

Defendants assert that Count III should be dismissed because the Complaint does not identify any specific contractual provision to which the implied covenant of good faith and fair dealing is said to attach. ECF No. [20] at 11. Further, Defendants contend that dismissal is warranted because BCN's claim is duplicative of its breach of contract claim. BCN responds that the implied covenant attaches to the promotional obligations in the Contract. ECF No. [30] at 10-11.

"[E]very contract contains an implied covenant of good faith that requires that parties conform to the standards of good faith and fair dealing in order to protect reasonable contractual expectations. Under Florida law, a breach of this covenant, however, does not create an

independent cause of action." *Viridis Corp. v. TCA Global Credit Master Fund*, 721 F. App'x 865, 877-78 (11th Cir. 2018) (internal citations omitted). "There can be no cause of action for a breach of the implied covenant 'absent an allegation that an express term of the contract has been breached.'" *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787, 792 (Fla. 2d DCA 2005) (quoting *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232,1234 (Fla. 4th DCA 2001)); *see Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) ("The covenant ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract.").

Similarly, this Court and other courts have found that a claim for breach of an implied covenant of good faith and fair dealing is invalid when it is based on the same facts as the breach of contract. *Griffin v. Motorsport Games, Inc.*, Case No. 24-cv-21929-BLOOM/Elfenbein, 2024 WL 4564330, at *6 (S.D. Fla. Oct. 24, 2024); *Shibata*, 133 F. Supp. 2d at 1319 ("[A] breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract."); *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, No. 08–81442–CIV., 2009 WL 2729954, at *5 (S.D. Fla. Aug. 25, 2009) ("A breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim[.]").

Here, the allegations supporting BCN's claim for breach of the implied covenant are that Defendants were obligated to make good faith efforts to perform their promotional obligations and breached the implied covenant by accepting advanced payment from BCN and failing to perform their promotional obligations. ECF No. [11] at ¶¶ 47-49. As Defendants correctly point out, and

BCN fails to address,[2] this claim is duplicative of BCN's breach of contract claim. *See id.* at ¶¶ 30-36. Accordingly, the Court dismisses Count III.

### iv. Count IV - Fraud in the Inducement

Defendants assert that Count IV should be dismissed because it is predicated on alleged oral representations that are directly contradicted by the express terms of the Contract. ECF No. [20] at 12. Separately, Defendants argue that the claim must be dismissed because BCN fails to plead its claim with the specificity required by Federal Rule of Civil Procedure 9(b). BCN responds that the fraud claim is not contradicted by the Contract and is based on the first clause of the Contract. ECF No. [30] at 11-12. Further, BCN contends that the claim is pled with the requisite specificity. *Id.* at 13.

To state a claim for fraud in the inducement, a party must allege a "(1) misrepresentation of a material fact, (2) by someone who knew or should have known of the statement's falsity, (3) with intent that the representation would induce another to rely and act on it, and (4) injury suffered in justifiable reliance on the representation." *Florida Evergreen Foliage v. E.I. Dupont Nemours & Co.*, 336 F. Supp. 2d 1239, 1284 (S.D. Fla. 2004). In addition, a party must comply with Rule 9(b)'s heightened pleading requirements.

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

---

[2] "Generally, a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him." *Melford v. Kahane & Assocs.*, 371 F. Supp. 3d 1116, 1126 n.4 (S.D. Fla. 2019) (internal quotations and citation omitted).

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)). "Rule 9(b) requires that Plaintiff[] 'specifically alleg[e] more than the vague and conclusory statement that they were induced by the misrepresentation' to withstand a motion to dismiss for failure to state a claim." *Jackson v. Anheuser-Busch InBev SA/NV, LLC*, Case No. 20-cv-23392-BLOOM/Louis, 2021 WL 3666312, at *7 (S.D. Fla. Aug. 18, 2021) (quoting *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1057 (Fla. 3d DCA 1995)).

BCN relies on *West Coast Life Insurance Co. v. Ruth Secaul 2007-1 Insurance Trust*, No. 09–81049–CIV., 2010 WL 27907, at *3-*4 (S.D. Fla. Jan. 5, 2010), to argue that the Complaint satisfies Rule 9(b)'s heightened pleading requirements. There, the court concluded that the complaint alleged (1) the misrepresentations made by the defendants with respect to the operative insurance policy; (2) that the misrepresentations were made on specific questions in the application for an insurance policy, and in response to specific questions of an agent's report; (3) the time and place of each misrepresentation; (4) how those misrepresentations misled the plaintiff, "issuance of the Policies and commissions [p]laintiff otherwise would not have issued"; and (5) that the policy was issued as a result of the defendants' misrepresentations. *Id.* at *3. However, *West Coast Life Insurance Co.*, is not comparable to the present case.

Here, the Complaint alleges that "[p]rior to and during negotiations of the Contract, Defendants made material representations to BCN regarding Ozuna's willingness and intent to personally perform the Promotional Obligations specified in the Contract," and that "Ozuna represented to BCN that he would actively promote the vape pens through his substantial social media following, participate in product launch activities, and engage in promotional photoshoots to leverage his celebrity status for the venture's success." ECF No. [11] at ¶¶ 55-56. Although the

Complaint alleges what statements were made, BCN fails to allege the time and place of each statement, to who the statements were made, whether the statements were made orally or in writing, and the content and manner in which the statements misled BCN. *See, e.g.*, *Nationwide Advantage Mortg. Co. v. Fed. Guar. Mortg. Co.*, No. 09–20372–CIV, 2010 WL 2652496, at *5 (S.D. Fla. Feb. 26, 2010) (concluding that the mere assertion that misrepresentations occurred "[o]n or before July 3, 2006" were insufficient to satisfy the time and place particularity requirements of Rule 9(b)); *Apollo Mgmt. Grp. v. Croxall*, CASE NO. 22-62398-CIV-DIMITROULEAS, 2023 WL 11799718, at *4 (S.D. Fla. Mar. 29, 2023) ("While the Court finds that the Complaint sufficiently alleges the who, what, and when as to these four statements, it fails to describe the where and how. Specifically, Plaintiff fails to indicate whether the statements were made orally or in writing, and the place where they were made." (internal citation omitted)); *DEHK LLC v. Mastec Inc.*, CASE NO. 24-21383-CIV-ALTONAGA/Reid, 2024 WL 4298812, at *3 (S.D. Fla. Sept. 26, 2024) (concluding that the second amended complaint failed "to allege the time and place of each statement and who was responsible for each. Rather, Plaintiffs make general allegations, such as '[p]rior to and during the . . . negotiations . . . [the] MasTec [Defendants] falsely represented' key facts." (alterations in original)).

Although the purpose of the Rule 9(b) standard is to provide Defendants "with notice of the claims and the alleged misconduct, and a complaint need not be a 'model for clarity or particularity,' the bare necessities to state a claim for fraud in the inducement nevertheless must be pled with sufficient specificity." *Etkin & Co. v. SBD, LLC*, CASE NO. 11-21321-CIV-LENARD/O'SULLIVAN, 2013 WL 12092536, at *5 (S.D. Fla. Mar. 18, 2013) (quoting *Brightstar Corp v. WSA Distrib., Inc.*, No. 09-20795-CIV, 2010 WL 1027420, at *1 (S.D. Fla. Mar. 18, 2010)). Accordingly, the Court dismisses Count IV.

### v.   Count V - Unjust Enrichment

Defendants argue that Count V must be dismissed because it is precluded by the existence of the Contract. ECF No. [20] at 14-15. Defendants additionally assert that the Complaint fails to allege the elements necessary to state a claim for unjust enrichment. *Id.* at 16. BCN responds that a motion to dismiss an unjust enrichment claim is premature where a contract is alleged, but not yet proven. ECF No. [30] at 14. Further, BCN contends that all elements of unjust enrichment have been adequately pled. *Id.* at 15.

As to Defendants' first argument, the Court finds that BCN's unjust enrichment claim fails as a matter of law because the parties do not dispute the validity of the Contract. Under Florida law, the elements for unjust enrichment are that "(1) the plaintiff conferred a benefit on the defendant, (2) the defendant voluntarily accepted and retained that benefit, and (3) 'the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.'" *Francois v. Hatami*, 565 F. Supp. 3d 1259, 1269 (S.D. Fla. 2021) (quoting *James D. Hinson Elec. Cont. Co., Inc. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 646 (M.D. Fla. 2011)). Unjust enrichment may be pled in the alternative to a breach of contract claim "where one of the parties asserts that the contract governing the dispute is invalid." *Martorella v. Deutsche Bank Nat'l Tr. Co.*, 931 F. Supp. 2d 1218, 1227 (S.D. Fla. 2013); *see Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010) ("[A]n unjust enrichment claim can only be pled in the alternative if one or more parties contest the existence of an express contract governing the subject of the dispute[.]" (quoting *in re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337-38 (S.D. Fla. 2002))). Otherwise, Florida law is clear that "a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter." *Martorella*, 931 F. Supp. 2d at 1227 (quoting *Alberta Ltd. v. Netpaying, Inc.*, 755 F. Supp. 2d 1218, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011)).

It is generally true that "[u]ntil an express contract is proven, a motion to dismiss a claim for unjust enrichment . . . is premature." *Id.* at 1228. However, here, neither party disputes the validity of the Contract. BCN concedes as much in the Response. *See* ECF No. [30] at 15. Thus, even drawing all inferences in favor of BCN, it cannot maintain its unjust enrichment claim. *See Alhassid v. Bank of Am., N.A.*, 60 F. Supp. 3d 1302, 1322 (S.D. Fla. 2014) ("Plaintiffs cannot maintain their unjust enrichment claims under the facts as alleged here because express contracts, the authenticity of which Plaintiffs cannot contest, do in fact govern the subject of Plaintiffs' dispute. . . . While Plaintiffs are entitled to plead in the alternative, they cannot dispute the authenticity of documents they submit to the Court for consideration and which are fundamental to their claims."); *Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 2d 1311, 1317 (S.D. Fla. 2011) ("As there is a valid express contract that no party challenges, Plaintiff may not recover under unjust enrichment, and may not assert it as an alternative claim[.]"). Accordingly, the Court dismisses Count V.

### vi.  Count VI - Promissory Estoppel

Defendants argue that Count VI must be dismissed because the dispute is governed by the Contract. ECF No. [20] at 16. BCN responds that until an express contract is proven, BCN may plead promissory estoppel in the alternative. ECF No. [30] at 16.

The elements of promissory estoppel are "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." *Gilbert v. Espirito Santo Bank of Fla.*, 2016 WL 4491439, at *3 (S.D. Fla. Aug. 24, 2016) (citing *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 650 (Fla. 3d DCA 2006)).

Similar to BCN's claim for unjust enrichment, "[w]hen neither side disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in

the alternative." *Am. Casual Dining, L.P. v. Moe's Southwest Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006); *see Carey v. Kirk*, Case Number: 21-20408-CIV-MARTINEZ-BECERRA, 2022 WL 17996027, at *8 (S.D. Fla. Sept. 2, 2022) ("[A] claim for promissory estoppel, even in the alternative, cannot survive upon a showing that an express contract exists." (citing *Baptist Hosp. of Mia., Inc. v. Medica Healthcare Plus, Inc.*, 385 F. Supp. 3d 1289, 1293 (S.D. Fla. 2010))); *JI-EE Indus. Co., Ltd. v. Paragon Metals, Inc.*, No. 09–81590–CIV., 2010 WL 1141103, at *1 (S.D. Fla. Mar. 23, 2010) ("There can be no . . . promissory estoppel claim when there is an express contract between the parties."); *Taylor, Bean & Whitaker Mortg. Corp. v. GMAC Mortg. Corp.*, No. 5:05-cv-260-Oc-10GRJ., 2006 WL 4990903, at *6 (M.D. Fla. June 15, 2006) ("Where . . . an express contract exists a claim for promissory estoppel fails because the express contract gives the Plaintiff an adequate remedy at law . . . . In the absence of any allegations in the Complaint of the basis for extra-contractual claims, Plaintiff's claim for recovery under promissory estoppel is entirely inconsistent with-and not alternative to-its claims for breach of contract."). Accordingly, the Court dismisses Count VI.

### vii. Count VII - Conversion

Defendants contend that Count VII against Ozuna fails because there are no allegations that BCN directed Ozuna on how the advanced payment was to be used. ECF No. [20] at 18. Further, Defendants argue that because the conversion claim stems from BCN's breach of contract claim, it must be dismissed. *Id.* at 19. BCN responds that the Complaint alleges a Ozuna's acts in converting the funds go beyond an ordinary the breach of contract claim, as Ozuna exceeded any contractual authorization and exercised dominion over the advanced payment in a manner directly inconsistent with BCN's rights by using the money for personal gain and not complying with his promotional obligations. ECF No. [30] at 19.

"Conversion is defined as an 'act of dominion wrongfully asserted over, and inconsistent with, another's possessory rights in personal property.'" *Frayman v. Douglas Elliman Realty, LLC*, 515 F. Supp. 3d 1262, 1285 (S.D. Fla. 2021) (quoting *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006)). "It is well-established law in Florida that a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion[.]" *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). However, "[t]his is not to say that there can never be a claim for . . . conversion if there is a contractual relationship between the parties, but rather that the . . . conversion must go beyond, and be independent from, a failure to comply with the terms of a contract." *Id.*

Courts have found that conversion claims constitute more than a breach of contract in two situations. "The first situation arises where defendants or their employees have stolen or embezzled funds, which were entrusted to them by the plaintiffs, for their own benefit." *Pharma Funding, LLC v. FLTX Holdings, LLC*, Case No. 20-21103-Civ-WILLIAMS/TORRES, 2021 WL 1166051, at *6 (S.D. Fla. Mar. 8, 2021) (citing *Szterensus v. Bank of Am., N.A.*, No. 08–22669–CIV., 2010 WL 427509, at *1 (S.D. Fla. Feb. 1, 2010)). "The second situation arises when a plaintiff owns funds and the money is given to the defendant to temporarily hold in a segregated and identifiable account, which the defendant then refuses to return." *Id.*, at *7 (citing *1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10–CV–568–T–27MAP., 2011 WL 1103635, at *4 (M.D. Fla. Mar. 24, 2011)). Further, "[i]n order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver the specific money at issue." *Indus. Park Dev. Corp. v. Am. Express Bank, FSB*, 960 F. Supp. 2d 1363, 1366 (S.D. Fla. 2013) (internal citation omitted).

Here, the Complaint fails to allege a conversion claim arising separately from BCN's breach of contract claim. The Complaint alleges that "BCN made an advanced payment of $1,000,000.00 to NIBIRU specifically for promotional activities to be performed by Ozuna," and that "Ozuna personally took control of these funds and diverted them for purposes unrelated to the Contract for his own personal benefit and gain." ECF No. [11] at ¶¶ 81, 83. The Complaint further alleges that the advanced payment "remained the property of BCN until such time as Defendants performed the promotional obligations for which the payment was made." ECF No. [11] at ¶ 82. BCN argues that Ozuna's continued possession of the advanced payment was unauthorized, emphasizing that under Florida law, "[t]he essence of the tort of conversion is a party's refusal to surrender the property after demand has been made." *Small Bus. Admin. v. Echevarria*, 864 F. Supp. 1254, 1262 (S.D. Fla. 1994). While this premise is true, the Complaint nevertheless fails to allege that Ozuna had "an obligation . . . to keep intact or deliver" the advanced payment. *See Indus. Park Dev. Corp.*, 960 F. Supp. 2d at 1366.

The Complaint alleges that "[t]he advanced payment was specifically tied to Ozuna's performance of the promotional obligations." ECF No. [11] at ¶ 85. However, the Contract states that "[t]he guaranteed minimum for the launch of this collection will be $1,000,000 (one million) US dollars payable within 15 days of the signing of this contract and before the photo shoot and recording takes place." ECF No. [11-2] at 8. BCN cannot now import a condition for the advanced payment when such condition is directly contradicted by the plain terms of the Contract. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit

controls."). Accordingly, BCN fails to allege a conversion claim separate from its breach of contract claim and Count VII is dismissed.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendants' Motion to Dismiss, **ECF No. [20]**, is **GRANTED IN PART AND DENIED IN PART**.

    a.   The Motion is **DENIED** as to Counts I and II.

    b.   Counts III-VII are **DISMISSED WITH PREJUDICE**.

2.  Defendants shall file an Answer to the Complaint by **September 22, 2025**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 5, 2025.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record